UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------- X
ARCH SPECIALTY INSURANCE COMPANY,

                *Plaintiff*,

-against-

DING SHENG CORPORATION,

                *Defendant*.
----------------------------------------X

**REPORT AND RECOMMENDATION**
24-cv-3583 (MKB)(JMW)

**A P P E A R A N C E S:**

    Vitaly Vilenchik, Esq.
    J. Gregory Lahr, Esq.
    **Hinshaw & Culbertson LLP**
    800 Third Avenue, 13th Floor
    New York, NY 10022
    *Attorneys for Plaintiff*

    *No Appearance by Defendant*

**WICKS**, Magistrate Judge:

Plaintiff Arch Specialty Insurance Company ("Plaintiff" or "Arch") commenced this action against Defendant Ding Sheng Corporation ("Defendant" or "DSC") on May 16, 2024, alleging breach of contract (Count I), unjust enrichment (Count II), and accounts stated (Count III). (*See generally*, ECF No. 1.) After the case was designated to arbitration, Plaintiff subsequently informed the Court that DSC failed to answer the Complaint or otherwise appear in this action, and requested the Clerk of the Court issue a Certificate of Default against DSC. (ECF No. 9.) The Clerk of the Court entered default against DSC on June 18, 2024 (ECF No. 10), and Plaintiff subsequently filed its Motion for Default Judgment against DSC on July 22, 2024 on Count I and Count III of the Complaint. (ECF No. 11.) Now before the Court, on referral from Chief Judge Margo K. Brodie, is Plaintiff's Motion for Default Judgment against

1

DSC. (ECF No. 11; Electronic Order dated July 23, 2024.) For the reasons stated herein, the undersigned respectfully recommends Plaintiffs' Motion for Default Judgment (ECF No. 11) be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

### I. *Factual Background*

The following facts derive from Plaintiff's Complaint unless otherwise noted. (ECF No. 1.) Plaintiff Arch is a corporation incorporated in the State of Missouri with a principal place of business at Harborside 3, 210 Hudson Street, Suite 300, Jersey City, New Jersey 07311. (*Id*. at ¶ 1.) Defendant DSC is a corporation incorporated in the State of New York with a principal place of business at 2 Linden Place, Glen Head, New York 11545. (*Id*. at ¶ 2.) Arch issued two General Commercial Liability Polices to DSC: (i) Policy No. AGL0059263-00 for the effective dates of April 25, 2019 to April 25, 2020 ("the 2019-2020 Policy"), and (ii) Policy No. AGL0059263-01 for the effective dates of April 25, 2020 to April 25, 2021 ("the 2020-2021 Policy"). (*Id.* at ¶¶ 6-7.) The 2019-2020 Policy and 2020-2021 Policy (collectively, "the Policies") are insurance contracts providing insurance coverage for certain liabilities of DSC in exchange for premiums. (*Id*. at ¶ 8.)

Pursuant to the Policies' terms, the initial premiums were based on information submitted by DSC and/or its insurance agent/broker on DSC's behalf regarding DSC's estimated exposure for the effective dates of coverage, and, because initial premiums are based on estimated information, the Policies are subject to audit based on the actual exposure during the effective dates of coverage. (*Id.* at ¶¶ 10-11.) The audits can result in additional premiums due to the insurer from the insured or return of premiums due to the insured from the insurer. (*Id*. at ¶ 11.) Plaintiff alleges the audit of the 2019-2020 Policy resulted in an additional premium of

$113,562.00 owed by DSC to Arch (the "2019-2020 Additional Premium"), and the audit of the 2020-2021 Policy resulted in an additional premium of $21,752.00 owed by DSC to Arch (the "2020-2021 Additional Premium"). (*Id.* at ¶¶ 12-13.) Plaintiff alleges DSC "failed and refused" to remit payment of the $113,562.00 owed to Arch pursuant to the terms of the 2019-2020 Policy, and $21,752.00 owed to Arch pursuant to the terms of the 2020-2021 Policy. (*Id.* at ¶¶ 14-15.)

Plaintiff asserts DSC is also obligated to pay a New York State Surplus Lines Tax and a New York State Stamping Fee equal to 3.6% and 0.17% of the additional premiums, respectively ("New York State Taxes and Fees"). (*Id*. at ¶ 17.) The total New York State Taxes and Fees for the 2019-2020 Additional Premium equals to $4,281.29, and the total New York State Taxes and Fees for the 2020-2021 Additional Premium equals to $820.05. (*Id*. at ¶ 18.) Prior to commencing the instant action, Arch demanded payment of the 2019- 2020 Additional Premium, the 2020-2021 Additional Premium, and New York State Taxes and Fees owed by DSC and attempted to collect the same without success. (*Id*. at ¶ 20-21.) Through its failure and refusal to remit payment of the 2019- 2020 Additional Premium, the 2020-2021 Additional Premium, and New York State Taxes and Fees, Plaintiff alleges DSC breached its contract with Arch, *i.e.* the 2019-2020 Policy. (*Id*. at ¶ 22-23.) Arch demands judgment against DSC in an amount no less than $140,415.34, together with, interest, attorney's fees, and costs of suit. (*Id*. at ¶ 24.)

**II**.     ***Procedural History***

The Complaint was filed on May 16, 2024 (ECF No. 1), and a Summons was issued as to DSC on May 17, 2024.  (ECF No. 5.) DSC was served on May 21, 2024. (ECF No. 6.) DSC's answer was due June 11, 2024. (*Id*.) On June 6, 2024, the Court issued a Notice Designating the Case to Arbitration (ECF No. 7), noting an Arbitration Hearing would be scheduled after an

Answer was filed. DSC failed to answer or otherwise respond to the Complaint.

Plaintiffs requested a Certificate of Default on June 12, 2024 (ECF Nos. 8-9), which was entered by the Clerk of the Court on June 18, 2024. (ECF No. 10.) In light of the Clerk's Entry of Default (ECF No. 10), the undersigned directed Plaintiff's Counsel to either move for default judgment or voluntarily dismiss the case by July 25, 2024. (*See* Electronic Order dated June 25, 2024, 2024.) Plaintiff filed its Motion for Default Judgment against DSC on July 22, 2024 (ECF Nos. 11), which was referred by Chief Judge Brodie to the undersigned for a Report and Recommendation. (Electronic Order dated July 22, 2024.)

## **THE LEGAL FRAMEWORK**

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. *First*, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.2. After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2(b). The decision to grant a motion for default is left to the sound discretion of the district court. *No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, No. 2-1CV-4755 (AMD)(JMW), 2022 WL 18399477, at *2 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023).

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations

4

in the complaint and the allegations as they pertain to liability are deemed true). "Where damages are susceptible to simple mathematical calculation and the plaintiff provides a 'sufficient basis from which to evaluate the fairness' of the requested damages, no evidentiary hearing is necessary." *Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-CV-4410 (VM), 2018 WL 1596192, at *5 (S.D.N.Y. Mar. 28, 2018) (quoting *Am. Jewish Comm.*, 2016 WL 3365313, at *4).

However, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The Court must therefore ensure: (i) Plaintiff satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84; and (iii) Plaintiff's request for damages is adequately supported.

It is against this backdrop that the undersigned analyzes the Motion for Default Judgment.

## DISCUSSION

### I. *Procedural Compliance*

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1)-(3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration

5

demonstrating that (A) the Clerk has entered default against the Defendants, (B) the movant has complied with the SCRA, and (C) that the individual defaulting defendant is not a minor or incompetent person, as well as all papers required by E.D.N.Y. Local Rule 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment has been personally served on or mailed to the defaulting defendants' residence or business address. E.D.N.Y. Local R. 55.2(a)(1)-(3).[1]

With respect to the non-military affidavit, before a default judgment can be entered for a plaintiff, the Servicemembers Civil Relief Act ("SCRA") commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). The SCRA requirement is inapplicable where, as here, the sole defaulting defendant, DSC, is a corporation, rather than an individual. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants).

Here, the motion against DSC complies with Local Rule 7.1 and Local Rule 55.2(a)(2) because it includes (1) a notice of motion (ECF No. 11 at 1); (2) a memorandum of law (ECF No. 11-14); (3) affidavits and exhibits to support Plaintiff's contentions (*see* ECF Nos. 11-2-6,

---

[1] Recently added under the Local Rules is that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." E.D.N.Y. Local R. 55.2(c).

6

8-13); and (4) a proposed order detailing the proposed judgment. (ECF No. 11-6.) The motion further complies with Local Rule 55, as Plaintiff properly attached and submitted a declaration affirming that the Certificate of Default was entered by the Court on June 18, 2024 (ECF No. 11-4) and a declaration that DSC, being a corporation, is not an infant, in the military, or an incompetent person. (ECF No. 11-1 at 2, ¶ 8.) Plaintiffs have also filed an affidavit of service of the requisite documents as to DSC via first class mail (ECF No. 12) to their Motion.

*Finally*, Plaintiff adhered to Local Rule 55.2(c) by filing a statement of damages demonstrating the proposed damages and basis for the element of damages. E.D.N.Y. Local R. 55.2(c). As to damages, Plaintiffs submit itemized breakdowns of the number of damages in the principal sum of $140,415.34 plus interest and costs and disbursements of this action in the amount of $584.07 (ECF No. 11-14 at 15-16), as well as a Declaration of Sal A. Pellitteri (ECF No. 11-7) and Vitaly Vilenchik, Esq. (ECF No. 11-1), detailing Plaintiff's entitlement to said damages. Accordingly, the undersigned finds that the Motion for Default Judgment is procedurally proper and turns to the merits of the Motion.

**II.    *Default Factors***

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). *But see Brown v. Gabbidon*, No. 06-CIV-8148 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("A discussion of

prejudice, willfulness and meritorious defenses is required once there is an entry of default or a default judgment and the court considers a request by a defaulting party to vacate that entry pursuant to Rules 55(c) or 60(b).").

Consideration of these three factors militates toward an entry of default judgment where, as here, DSC has wholly failed to appear and present any sort of defense, and Plaintiffs are left with no further steps to take to secure relief. *See ADI Glob. Distribution*, 2023 WL 3355049, at *4; *see also Flooring Experts*, *Inc*., 2013 WL 4042357, at *3 (when a defendant is continuously and completely unresponsive the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012); *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *9 (Mar. 1, 2018) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court"), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted).

**III.** <u>*Liability*</u>

Arch moves for default judgment against DSC on Count I for breach of contract and on Count III for accounts stated. *See* ECF No. 11-14 at 6. The Court addresses each claim in turn.

As a preliminary matter, this Court notes that New York law applies to Plaintiff's breach of contract claim. "According to long-settled precedent, a federal court sitting in diversity

8

borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1509 (2022). For contract disputes where there is no applicable choice-of-law clause, New York courts apply a "center of gravity" approach, considering "a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030–31 (2d Cir. 1996), *cert denied*, 519 U.S. 1116 (1997).

Specifically, "[t]he New York Court of Appeals has observed that, 'where liability insurance contracts are concerned, the applicable law is generally the local law of the state which the parties understood was to be the principal location of the insured risk[,]" and, where, as here, "liability insurance policies cover multistate risks, New York courts have regarded the state of the insured's domicile to be a proxy for the principal location of the insured risk." *Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.,* 566 F. App'x 95, 97 (2d Cir. 2014) (internal citations omitted) (cleaned up). To this end, as Defendant DSC is a New York corporation with its principal place of business in New York, New York law governs. *See* ECF No. 11-14 at 11.

To state a claim for breach of contract under New York law, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff; (3) defendant's breach; and (4) damages resulting from the breach. *Dee v. Rakower*, 976 N.Y.S.2d 470, 474 (2nd Dep't, App. Div. 2013); *see also Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019).  Here, the undersigned finds that Plaintiff has adequately alleged DSC failed to comply with its obligations to pay the premiums owed under the Policies, and that Plaintiff otherwise met its coverage obligations to DSC under the Policies. *First*, Plaintiff alleges that Arch and DSC entered into two contracts for insurance, *i.e.*, the 2019 Policy and 2020 Policy, "which explicitly provided

9

that the premiums for the period of coverage were provisional and would be subject to upward or downward adjustment retroactive to the effective date of the respective policies." ECF No. 11-14 at 12. *Second*, Plaintiff alleges that it "Arch completely fulfilled its contractual obligations under the 2019 Policy and 2020 Policy and provided coverage to DSC, as afforded by the respective policies. (ECF No 1 at ¶ 9; ECF No. 11-17 at ¶ 8.)

*Third*, Plaintiff alleges DSC breached the insurance contracts in two respects and Arch sustained damages as a result. Consistent with the terms of the Policies, Arch attempted to conduct audits of DSC in order to calculate such adjustments – and alleges that the audit of the 2019 Policy produced total additional premium and New York State Taxes and Fees calculations of $117,843.29 owed by DSC to Arch, which DSC has not paid despite Arch's demands. *Id*.; *see also Arch Specialty Ins. Co. v. Apco Indus., Inc.*, No. 18-CV-4041-ENV-SJB, 2020 WL 6581000, at *5 (E.D.N.Y. Oct. 5, 2020) ("An insured's failure to pay premiums due under an insurance contract constitutes a breach.").

Plaintiff further alleges the 2020 Policy explicitly provided that if DSC failed to submit to an audit at the conclusion of the policy period, then Arch may calculate the final total premium at a rate of three times the Total Premium Subject to Audit ($10,876.00) as shown on the Declarations of the 2020 Policy, and, "[d]espite numerous efforts to secure DSC's cooperation, DSC failed to submit to an audit of the 2020 Policy" producing a total additional premium and New York State Taxes and Fees calculations of $22,572.05 owed by DSC to Arch, which DSC has not paid despite Arch's demands. ECF No. 11-14 at 13. *See e.g*., *Liberty Mut. Ins. Co. v. Fast Lane Car Serv., Inc.*, 681 F. Supp. 2d 340, 347 (E.D.N.Y. 2010) ("After Liberty Mutual discovered the details of Fast Lane's true operations in Brooklyn, and increased defendant's premium accordingly, Fast Lane failed to pay Liberty Mutual the adjusted premium. With these

10

facts, the Court finds that Liberty Mutual has satisfied all the elements necessary to state a breach of contract claim against Fast Lane."). Accordingly, the undersigned finds Arch has established a breach of contract under New York law.

However, the undersigned finds "Arch [] has not established, and cannot establish, [DSC's] liability for account stated because they are duplicative claims." *Arch Specialty Ins. Co.*, No. 18-CV-4041-ENV-SJB, 2020 WL 6581000, at *5. "[C]laims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (internal citations omitted) (cleaned up); *Arch Specialty Ins. Co.*, No. 18-CV-4041-ENV-SJB, 2020 WL 6581000, at *5 (collecting cases) (account stated claims that "arise from the same facts and seek the same relief" as a claim for breach of contract must therefore be dismissed).

Arch's account stated claim is premised on the same facts as its breach of contract claim: that Arch provided insurance coverage to DSC pursuant to the Policies, and DSC refused to pay according to the Polices' terms. *See* ECF No. 11-14 at 13 ("In the instant case, Arch has submitted sufficient evidence demonstrating that an account was rendered for the 2019 Additional Premium, 2020 Additional Premium and New York State Taxes and Fees, and that DSC—after receiving the audit worksheets and endorsements—failed to dispute the balance due within a reasonable time, or otherwise respond to Arch's demands for payment."). Arch also seeks the same relief under each claim – *i.e.*, principal damages for the 2019 Additional Premium, 2020 Additional Premium and New York State Taxes and Fees totaling $140,415.34. *Id.* at 15. *Arch Specialty Ins. Co. v. Kajavi Corp.*, No. 18-CV-4043, 2019 WL 3719461, at *3 (E.D.N.Y. July 11, 2019) ("A defendant cannot be found liable on both an account stated claim and a breach of contract claim in connection with the same allegations of a failure to pay monies

11

owed."). Thus, because Plaintiff's account stated claim is duplicative of its breach of contract claim, the undersigned respectfully recommends that the former claim be dismissed with prejudice.

### IV. *Damages*

Once liability for default is established, the next inquiry is damages. *See Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations omitted), *report and recommendation adopted*, 2012 WL 1354481, at *2 (Apr. 13, 2012) (While "the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded.") A party's default constitutes a concession of all well pleaded allegations, however, such default "is not considered an admission of damages." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 271 (E.D.N.Y. 2019) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)).

"It is a fundamental principle of contract law that an award of damages should place a plaintiff in the same position as that party would have been if the contract had not been breached." *Rich-Haven Motor Sales, Inc. v. Nat'l Bank*, 163 A.D.2d 288, 289 (N.Y. App Div. 2d Dep't 1990). "[D]amages may not be merely speculative, possible or imaginary," rather, they "must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *Wenger v. Alidad*, 265 A.D.2d 322, 323–24 (N.Y. App. Div. 2d Dep't 1999). Here, Arch seeks the following damages:

- Principal damages for the 2019 Additional Premium ($113,562.00), 2020 Additional Premium ($21,752.00) and New York State Taxes and Fees ($4,281.29 for the 2019 Additional Premium and $820.05 for the 2020 Additional Premium), totaling $140,415.34.

12

- Litigation costs in this action, including this Court's filing fee of $400, and the costs paid for service of process, which is $184.07, for a total of $584.07.

- Prejudgment interest on its damage award dating from June 30, 2021, to the date of entry of final judgment.

- An unspecified amount in attorneys' fees.

ECF No. 11-14 at 15-16. The undersigned addresses each request in turn.

### A. *Principal Damages*

The undersigned finds Arch "has established that, if [DSC] had not breached, it would have been paid the Additional Premium and Taxes and Fees" and, "has also established the amounts with the requisite certainty." *Arch Specialty Ins. Co.*, No. 18-CV-4041-ENV-SJB, 2020 WL 6581000, at *6. Specifically:

> The audit report and endorsement demonstrate that the audit of the 2019 Policy produced the 2019 Additional Premium of $113,562.00. The uncooperative audit report and endorsement demonstrate that DSC's failure to cooperate with the audit of the 2020 Policy produced the 2020 Additional Premium of $21,752.00.

ECF No. 11-14 at 15; *see also* ECF Nos. 11-10, 11-11, 11-12, 11-13. Plaintiff additionally requests New York State Surplus Lines Tax and a New York State Stamping Fee equal to 3.6% and 0.17% of the additional premiums, totaling $4,281.29 for the 2019 Additional Premium and $820.05 for the 2020 Additional Premium. ECF No. 1 at ¶17; *see also* ECF No. 11-7 at 5, ¶¶ 21-23 (noting that DSC is also obligated to pay a 3.77% New York State Taxes and Fees as a result of the additional premiums owed). The Court has independently confirmed that Taxes and Fees total $4,281.29 for the 2019 Additional Premium (3.77% of $113,562.00) and $820.05 for the 2020 Additional Premium (3.77% of $21,752.00). Therefore, the undersigned respectfully recommends that Arch be awarded $140,415.34 in damages.

13

**B.** *Costs*

Plaintiff seeks litigation costs in this action, including this Court's filing fee of $400, and the costs paid for service of process, which is $184.07, for a total of $584.07 in costs. Pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure, a prevailing party is entitled to recover certain taxable costs – including filing fees and reasonable service of process fees. *See Master Grp. Glob. Co. v. Toner.Com Inc.*, No. 19-CV-6648, 2020 WL 5260581, at *15 (E.D.N.Y. Aug. 10, 2020), *report and recommendation adopted*, 2020 WL 5259057 (Sept. 3, 2020). Plaintiffs "bear [] the burden of adequately documenting and itemizing the costs requested." *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549, 2020 WL 5899881, at *14 (E.D.N.Y. Mar. 12, 2020)).

However, "[f]iling fees are recoverable without supporting documentation if verified by the docket." *Arch Specialty Ins. Co.*, No. 18-CV-4041-ENV-SJB, 2020 WL 6581000, at *7; *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (a filing fee is "a fact of which the Court can take judicial notice"). Here, the docket indicates the $400 filing fee was paid. (ECF No. 1). Therefore, although Arch did not submit a receipt, the filing fee should be awarded. With respect to process serve fees, they are "also recoverable, but they must be supported by documentation." *Arch Specialty Ins. Co.*, No. 18-CV-4041-ENV-SJB, 2020 WL 6581000, at *7. Here, Arch provided an invoice for a process server fee of $184.07 (ECF No. 11-5 at 2) and indicated that this fee was paid (ECF No. 11-7), which is sufficient for Arch to recover process server fees. *See, e.g.*, *id.* Therefore, the Court respectfully recommends an award of $584.07 in costs.

**C.** *Prejudgment Interest*

Arch additionally seeks prejudgment interest on its damage award dating from June 30, 2021, to the date of entry of final judgment.

14

Pursuant to CPLR section 5001, parties are entitled to recover interest "upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a). "Interest shall be computed from the earliest ascertainable date the cause of action existed." § 5001(b); *see also Arch Specialty Ins. Co.*, No. 18-CV-4041-ENV-SJB, 2020 WL 6581000, at *6 (citing N.Y. C.P.L.R. § 5001-5004) ("[I]nterest accrues through the date of decision. In addition, the non-breaching party is also entitled to interest on the total award, including the accrued interest, through the date of entry of final judgment. The statutory interest rate is nine percent per year.").

Arch has established DSC's breach of contract, and that the earliest date of that breach is June 30, 2021, the date the Additional Premiums became due. *See* ECF No 11-14 at 16 (With respect to both the 2019 Policy and 2020 Policy, the payment due date by DSC was on June 30, 2021. Accordingly, the prejudgment interest should be calculated from June 30, 2021."). Thus, it is respectfully recommended that Arch be awarded interest of $34.62 per day (9% of $140,415.34 divided by 365 days a year) beginning June 30, 2021, until the date of the Court's final decision resolving any objections to this Report and Recommendation. "It is further recommended that Arch be awarded interest, at nine percent per annum, on the total award, inclusive of accrued interests and costs, through the date final judgment is entered in a total amount to be calculated by the Clerk of Court." *See e.g.*, *Arch Specialty Ins. Co.*, No. 18-CV-4041-ENV-SJB, 2020 WL 6581000, at *7.

    D.    *Attorneys' Fees*

*Finally*, Plaintiff seeks an unspecified amount of attorney's' fees. Preliminarily, under New York law, attorneys' fees are generally "'the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule.'" *Arch Specialty Ins. Co. v. L&L Interior Contracting Servs. Corp.*, No. 18-CV-4175,

15

2019 WL 5394502, at *1 (E.D.N.Y. Oct. 22, 2019) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003)). Here, Arch "has not identified any provision in the Polic[ies] that provides for either party to recover attorney's fees, and the Court's review of the agreement[s] revealed no such provision." *Arch Specialty Ins. Co.*, No. 18-CV-4041-ENV-SJB, 2020 WL 6581000, at *7.

Moreover, the instant Motions fails to provide *any* documentation, records or support regarding Plaintiff's entitlement to attorneys' fees and costs, or as to what the amounts should be. Regardless of "the absence of opposition" due to the default of defendant, "the court cannot simply accept a statement of the plaintiff concerning the amount of damages, but rather must be provided with evidentiary proof that establishes the amount of damages." *Century 21 Real Est. LLC v. Team Mates Realty Corp.*, No. 07-cv-4134 (NG) (VVP), 2009 WL 910655, at *5 (E.D.N.Y. Feb. 18, 2009), *report and recommendation adopted*, 2009 WL 890561 (E.D.N.Y. Mar. 31, 2009).

Therefore, the undersigned concludes that an award of attorneys' fees is inappropriate here given the paucity of support. *See Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983) (holding the party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and necessity of hours spent and rates charged); *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 277 (E.D.N.Y. 2010) (An application for attorney's fees must be supported "by accurate, detailed, and contemporaneous time records."); *see also Gesualdi v. Gen. Concrete*, Inc., No. 11 CV 1866, 2013 WL 1192967, at *9 (E.D.N.Y. Feb. 1, 2013) (internal citations omitted) ("The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances."); *Cap. One Fin. Corp. v. Cap. One Certified Inc.,* No. 18CV580ARRRML, 2019 WL 1299266, at *8 (E.D.N.Y. Mar. 5, 2019),

16

*report and recommendation adopted*, No. 18CV580ARRRML, 2019 WL 1299661 (E.D.N.Y. Mar. 21, 2019) (same).

In light of the foregoing, it is respectfully recommended that Plaintiff's application for attorney's fees be denied, *without prejudice and with leave to renew*, articulating the basis for Plaintiff's counsels' entitlement to fees, and with supporting documentation as to entitlement or amount of fees.

## CONCLUSION

For the reasons stated above, the undersigned respectfully recommends Plaintiff's Motion for Default Judgment (ECF No. 11) be **GRANTED** and that judgment be entered against DSC as follows:

(i) Principal damages for the 2019 Additional Premium ($113,562.00), 2020 Additional Premium ($21,752.00) and New York State Taxes and Fees ($4,281.29 for the 2019 Additional Premium and $820.05 for the 2020 Additional Premium), totaling $**140,415.34**.

(ii) Litigation costs in this action, including this Court's filing fee of $400, and the costs paid for service of process, which is $184.07, for a total of **$584.07**.

(iii) Prejudgment interest on the damage award in the amount of **$34.62 per day beginning June 30, 2021**, until the date of the Court's final decision resolving any objections to this Report and Recommendation.

(iv) Post-judgment interest, at nine percent per annum, on the total award, inclusive of accrued interests and costs, through the date final judgment is entered in a total amount to be calculated by the Clerk of Court.

It is additionally recommended that Plaintiff's application for attorney's fees be **denied**, ***without prejudice and with leave to renew***, articulating the basis for Plaintiff's counsels' entitlement to fees, and with supporting documentation as to entitlement or amount of fees.

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on Plaintiffs' counsel. Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendant via first-class mail and via email and promptly file proof of service on ECF **within two business days**. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:   Central Islip, New York
         February 1, 2025

**RESPECTFULLY RECOMMENDED**,

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge